UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

IN RE PADCO ENERGY SERVICES, 16-51380
LLC, Debtor

| | |
|---|---|
| CASE ENERGY SERVICES, LLC | CIVIL ACTION |
| VERSUS | NO: 17-884 |
| PADCO PRESSURE CONTROL | SECTION: "S" (2) |

| | |
|---|---|
| CASE ENERGY SERVICES, LLC | CIVIL ACTION |
| VERSUS | NO: 17-885 |
| PADCO ENERGY SERVICES | SECTION: "S" (2) |

## OPINION

Defendant-appellant, Case Energy Services, L.L.C. ("Case") appeals the June 27, 2017 ruling of the bankruptcy court denying its motions to dismiss the claims brought against it by Padco Energy Services, L.L.C., and Padco Pressure Control, L.L.C. and denying its Motion to Transfer to Another Division, in two adversary proceedings, 17-5006 and 17-5007.[1] For the reasons that follow, the ruling of the Bankuptcy Court is AFFIRMED.

## BACKGROUND

This matter involves two distinct but related companies, Padco Energy Services, L.L.C. ("Energy"), and Padco Pressure Control ("Pressure"). Pressure, an affiliate of Energy, was

---

[1] Due to a judicial vacancy in the Western District of Louisiana, these matters were reassigned to the undersigned on July 26, 2018. Civil Action 17-884, Rec. Doc. 19; Civil Action 17-885, Rec. Docs. 26 & 27.

formed in April 2015, with members Jason Farnell (40% ownership) and Michael Carr (60% ownership). Farnell was to run the day to day operations of the company, due to his previous experience with the "flowback" process.

Pressure and Energy (hereinafter, collectively sometimes "Padco" or "debtors") allege that from time to time between April 30, 2014 and September 24, 2015, Pressure (but not Energy) purchased materials from Case. In November of 2015, Carr was informed of a potentially suspicious relationship between Case and Farnell. The month before, Carr had hired employees to conduct a review of all Pressure invoices and financial statements. This review revealed numerous discrepancies, including duplicated serial numbers on equipment purchased from Case, double billing, billing for inventory that was never received, and billing statements that did not match the signed invoices for products received – all from Case.

Pressure and Energy further allege that in response to inquiries to Case regarding the discrepancies in invoices and serial numbers, Pressure was given altered invoices, with different serial numbers. However, many of the new serial numbers did not match up with inventory. Notwithstanding these discrepancies, Case issued written demand upon Pressure and Energy for the sum of $1,236,122.69. However, based upon the review of the invoices, Pressure and Energy allege that Case over-billed Pressure by $522,769.69. They further allege that of the $713,353.00 that should have been billed, Case has been paid $805,987.75, representing an overpayment by Pressure of $92,634.75, which Pressure seeks to have returned.

Beginning on May 4, 2016, Case filed liens against both Pressure and Energy (and others), on thirty-six oil and gas wells in various parishes in Louisiana and counties in eastern Texas, each in the amount of $1,200,000.00, for sums allegedly due it by Pressure. Case claimed

that a privilege was established pursuant to La. R.S. 4861, et seq., by virtue of movables which it had sold to an operator or contractor or delivered to a well-site.

In contrast, Pressure and Energy allege that the last materials purchase from Case was on September 24, 2015, the purchase was by Pressure, not Energy, and that the liens, not recorded until May 4, 2016 were untimely. Pressure and Energy further allege that the liens were also levied against numerous wells to which Energy never delivered any equipment purchased from Case, and that the liens are therefore invalid and without effect. Pressure and Energy also contend that the liens are invalid because they are not limited to actual work performed on each well, and each lien is for an identical amount of $1.2 million; no lien is allowed for equipment sold if the equipment is merely used on a well and not "consumed" by the well; and in this case, all of the alleged equipment was never "consumed" by or delivered to the liened well by Energy or Pressure, but will presumably last for many years; and the liens contain no allocation of which Pressure equipment was used on which well.

On June 14, 2016, Case filed a petition in the 26th Judicial District Court for the Parish of Bossier against the debtors and other defendants for alleged amounts owed for equipment sold to debtors, as well as alter ego claims and recognition of the liens (the "state court suit"). On October 4, 2016, Energy and Pressure filed for relief under Chapter 11 of the Bankruptcy Code in the Western District of Louisiana, Lafayette Division.

On July 12, 2017, Pressure and Energy each filed adversary proceedings, alleging that Case and Farnell engaged in systematic and ongoing fraudulent business practices in an effort to defraud Pressure. The suits further allege that the liens were wrongfully filed, causing damages due to loss of customers, business, and relationships. Energy and Pressure seek, inter alia,

dissolution of all liens wrongfully filed by Case, and damages and attorneys' fees under the Louisiana Unfair Trade Practices Act, La. R.s. 51:1401, et seq. ("LUTPA").

In response, Case filed its motion to dismiss, arguing that the bankruptcy court lacked jurisdiction, that Energy and Pressure lack standing to challenge the liens, and that plaintiff has failed to state a claim under LUTPA or any other viable theory of recovery for damages resulting from the filing of the liens, nor are they entitled to attorney's fees. Case also moved for an intra-district transfer from Lafayette to Shreveport, and for a more definite statement of the fraud claims. The Bankruptcy Court denied all the relief requested, except that it ordered that the fraud claims be re-pleaded with more specificity. The instant timely appeal followed. Finding that the Bankruptcy Court did not err, the court affirms its ruling.

## STANDARD OF REVIEW

District courts of the United States have jurisdiction to hear appeals from orders of the bankruptcy court. See 28 U.S.C. § 158(a). "[C]onclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000).

## DISCUSSION

The hearing of this matter was held on June 27, 2017, after which the bankruptcy court issued its oral order and reasons from the bench. The bankruptcy court: (1) denied Case's motion to dismiss for lack of subject matter jurisdiction; (2) denied Case's Federal Rule 12(b)(1) motion to dismiss for lack of standing; (3) denied Case's Federal Rule 12(b)(6) motion to dismiss Padco's LUTPA claims and for attorneys' fees; and (4) denied Case's motion for intra-district transfer pursuant to 28 U.S.C. §1404(b).

4

1. **Jurisdiction**

Case contends that the bankruptcy court lacked jurisdiction over these adversary proceedings because debtors seek dissolution of liens on property which is not owned nor operated by debtors, and thus it is not part of the bankruptcy estate.

Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11. . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

The bankruptcy court denied Case's motion to dismiss for lack of subject matter jurisdiction, based on its finding that even if the liened wells were not part of the bankruptcy estate, resolution of the dispute alleged in the adversary proceedings could affect the bankruptcy estate. The bankruptcy court also noted that the debtors' causes of action were part of the estate. This court agrees.

As noted by the Fifth Circuit Court of Appeals, "[t]he scope of property rights and interests included in a bankruptcy estate is very broad: The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate." Matter of Kemp, 52 F.3d 546, 550 (5th Cir.1995); see also, In re Jazzland, Inc., 322 B.R. 610, 615 (E.D. La. 2005), aff'd, 161 F. App'x 436 (5th Cir. 2006). An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Wood, 825 F.2d 90, 93 (5th Cir.1987). Applying this test to the present case, the adversary complaints are sufficiently

related to the pending bankruptcy to allow the district court to exercise jurisdiction under section 1334.

As the bankruptcy court observed, Pressure and Energy's adversary complaints allege that when Case filed the liens, the owners/operators of those wells immediately began escrowing money that otherwise would have been paid to Pressure, thus constricting its cash flow and causing damages. Pressure's complaint also seeks a return of overpayments made to Case. Finally, debtors' causes of action are part of the bankruptcy estate. Thus, at a minimum, the bankruptcy court possesses "related to" jurisdiction because adjudication of the claims in the adversary proceedings could conceivably affect Energy and Pressure's bankruptcy estates.

**2.    Standing**

Case also appeals that portion of the bankruptcy court's ruling denying its motion to dismiss debtors' claims for wrongful liens against Case pursuant to 12(b)(1). "Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists. Id.

In making their wrongful lien claim, debtors argued that Case's improper filing of multiple liens on multiple wells across North Louisiana and East Texas resulted in a depletion of operating capital and revenue, and thus was a partial cause of the bankruptcy filings. Case

argued that debtors had no standing to bring a wrongful lien claim, because they did not own the liened wells. The bankruptcy court found that ownership of the liened wells was not a prerequisite for standing to bring a wrongful lien claim. In so finding, it pointed to P & A Well Serv. Inc. v. Blackie's Power Swivels Inc., 507 So. 2d 280, 281 (La. App. 3rd Cir.), writ denied, 513 So. 2d 288 (La. 1987).

In that case, Blackie's leased an oil field drilling tool called a power swivel to Fishing Tool for $400 per day. Fishing Tool then rented the power swivel to P&A, a well contractor, for use in its workover operation. P&A used the swivel only two days, returned it to Fishing Tool, and paid the agreed upon rental. However, Fishing Tool did not return the swivel to Blackie's for almost two and half months, incurring a $29,930 bill for the power swivel rented to it and purportedly used by P&A. Blackie's filed a lien notice against certain oil/gas leases where P&A was performing workover operations in St. Martin Parish. P&A then filed suit against Blackie's for cancellation of the lien and damages from filing an improper lien. Blackie's answered and reconvened against P&A for recognition of the lien and payment of the rent due on the power swivel. After discovery depositions were taken, Blackie's substituted the Dow Chemical No. 1 well for the originally named well, and added Edward and Margaret Estis, owners of the oil well and sole stockholders of P&A, as defendants with P&A.

While the suit went to judgment on other issues irrelevant to the case at bar, the bankruptcy court cited and discussed the P&A Well Service case as an example in which suit was brought by a non-owner contractor for wrongful filing of liens on a well, and no standing issue was raised. In P&A Well Service, neither the district court nor the appellate court took issue with the plaintiff's standing to pursue a claim for wrongful filing of the liens, or suggest

7

that as a non-owner the contractor could not pursue such a claim. And, as the bankruptcy court observed, while the facts in P&A Well Service differ slightly from the instant case in that the sole stockholders of the contractor were also owners in the oil and gas wells, stockholders of a company are distinct from the company itself, and in P&A Well Service, the party bringing the action was the contractor and not the well owners.

The court is also unpersuaded by the reasoning of Genina Marine Services Inc. v. Arco Oil & Gas Co., which held that "[t]he Oil Well Lien Act ["LOWLA"] does not create any personal obligations. The act grants a privilege over certain property to certain people." 552 So. 2d 1005, 1008 (La. App 1 Cir. 1989). Genina Marine is inapposite because it involved an action against a well owner seeking recognition and enforcement of a LOWLA lien. It is inapplicable to the present case in which a non-owner/contractor seeks damages for the improper filing of liens on the basis that they were improvidently and maliciously filed expressly to cause damages to the contractor. Padco is not attempting to bring any type of action under LOWLA, rather, it is bringing an action under LUTPA arguing that the deceptive practice violate of LUTPA was the malicious and improvident filing liens on wells. And, as noted by the bankruptcy judge, Case has pointed to no legal authority for the proposition that only a well owner may seek a remedy for damages caused by the wrongful filing of a lien.

3.   **Louisiana Unfair Trade Practices Act**

The bankruptcy court also denied Case's 12(b)(6) motion to dismiss debtors' claims under the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, et seq. ("LUTPA").

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule

12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S.Ct. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).

LUTPA declares unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). Section 1409(A) grants a private right of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" as a result of a LUTPA violation to recover actual damages and, if such damages are awarded, reasonable attorney's fees. "Acts which constitute a violation of LUTPA are not specifically defined in the statute and are instead determined by courts on a case-by-case basis." Gulf Coast Hous. & Dev. Corp. v. Capital One, 203 So. 3d 366, 371 (La. App. 4 Cir. 10/5/16) (citing Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc.,144 So. 3d 1011, 1025 (La. 5/7/14)).

In denying Case's motion to dismiss the LUTPA claims, the bankruptcy court observed that the bulk of Case's argument rested on the theory that because debtors were not Case's competitors, LUTPA does not apply to them. However, as the bankruptcy court noted, LUTPA

9

grants a right of action to *any person,* "natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"; it is not limited to business consumers and competitors. Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 35 So. 3d 1053, 1057 (La. 4/23/10). Moreover, the bankruptcy court noted that in its survey of case-by-case determinations of what qualifies (or does not) as a LUTPA violation, no court has found as a matter of law that the wrongful filing of a lien may not be considered a deceptive practice under LUTPA. While this court recognizes that the range of prohibited practices under LUTPA is extremely narrow (see Cheramie, 35 So. 3d at 1060), the gist of debtors' complaints in these adversary proceedings is that Case conspired with Farnell (a company director), to overbill debtors, and when challenged, filed improper liens on wells with which debtors did business in an effort to choke off their cash flow, thus driving them out of business and hastening their bankruptcy filings. Applying the 12(b)(6) standard, and accepting as true the allegations of the adversary complaints, the court finds that the bankruptcy court did not err in denying Case's motion to dismiss the LUTPA claims.

4.      **Venue - Intra-district transfer**

The bankruptcy court also denied Case's motion for an intra-district transfer from Lafayette to Shreveport, specifically finding that Case had not met its burden of showing that the applicable factors in this case clearly weighed in favor of a transfer from Lafayette to Shreveport. The issue presents a mixed question of law and fact and is therefore reviewed de novo. In re Nat'l Gypsum Co., 208 F.3d at 504.

Title 28 U.S.C. section 1404(a) provides that "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of the statute is to prevent waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26-27 (1960). To determine whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is warranted, courts consider both private and public interest factors. In re Volkswagen, 545 F.3d 304, 315 (5th Cir. 2008). The same considerations apply when, as here, the transfer sought is within the same district. See In re Redmax, Ltd., 720 F.3d 285, 286 (5th Cir. 2013).

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] in the application of foreign law. In re Volkswagen, 545 F.3d at 315 (citing Gulf Oil Corp. v. Gilbert, 67 S. Ct. 839, 843 (1947)) (internal citations omitted).

"The moving party bears the burden of demonstrating that the case should be transferred to an alternate forum." Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966). To justify a transfer, the alternative venue must be "clearly more convenient" than the chosen venue. In re Volkswagen, 545 F.3d at 315. "When the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." In re Volkswagen of Am. Inc., 506

F.3d 376, 384 (5th Cir.2007). This court agrees with the conclusion of the bankruptcy court that in this case, the factors did not clearly weigh in favor of an intra-district transfer from debtor's choice of forum, Lafayette, to Shreveport.

With respect to the ease of access to sources of proof, the debtor's only office is in Lafayette. And, as specifically noted by the bankruptcy court, the fact that the location of the equipment subject to liens is in Minden is neutral in this case. Counsel for and representatives of Case will have to drive from their offices in Shreveport to Minden to access the equipment regardless of which venue is chosen. Thus, the first factor favors Lafayette.

The bankruptcy court's inquiry at the hearing focused in large part on the availability of compulsory process to secure the attendance of witnesses which were not under the control of the parties. The bankruptcy court emphasized that many of the witnesses were employees of the parties and thus under the parties' control, and therefore could be required to attend. However, as noted by the bankruptcy court, Case could only specifically identify one witness, Rebecca Compton, whom it claimed was necessary and not subject to compulsory process. Moreover, the bankruptcy court stated on the record that it was not clear that Ms. Compton was not under the control of a party and thus could be required to attend. The bankruptcy court also noted that many of the debtor's witnesses are located in Houston, and in neither city would the Houston witnesses be subject to compulsory process. And finally on this point, the Court noted that regardless of where the case was filed, there would be some witnesses for which there would be issues as far as compelling process. Accordingly, the second factor does not clearly favor Shreveport, and is either neutral or slightly in favor of Lafayette.

With respect to the cost of attendance for willing witnesses, as the district court observed,

for the Houston witnesses, Lafayette would be more convenient (or at a minimum, no less inconvenient) as a venue than Shreveport, and for the Shreveport witnesses, the bankruptcy court found that a three-and-a-half hour drive was not unduly burdensome, noting that the Lafayette bankruptcy court entertains many cases involving Shreveport creditors and parties. Again, this factor does not weigh strongly in favor of either venue. No other practical problems were identified by the bankruptcy court that would favor one venue over the other, and the public interest factors are either neutral or inapplicable in this case, which involves a potential transfer within the same district.

Based on the foregoing, the bankrupty court found, and this court agrees, that Case has not met its burden of demonstrating that the factors clearly weigh in favor of transferring this case to Shreveport. Accordingly, that portion of the judgment is affirmed.

## CONCLUSION

For all of the foregoing reasons, the ruling of the bankruptcy court entered on June 27, 2017 is AFFIRMED.

New Orleans, Louisiana this 29th day of March, 2019.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**